UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| YUSEF ABDULLAH BILAL ALI, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 3:22-cv-00463-CHB-RSE |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND** |
| LOUISVILLE METRO HOUSING | ) **ORDER** |
| AUTHORITY, et al., | ) |
| | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Before the Court is the Motion for Preliminary Injunction filed by *pro se* Plaintiff Yusef Abdullah Bilal Ali ("Plaintiff"). [R. 9]. In the motion, Plaintiff requests "a preliminary injunction that prevents Defendant Louisville Metro Housing Authority from initiating eviction proceedings and prevents Defendant Louisville Metro Housing Authority from otherwise evicting Plaintiff[.]" Pursuant to the Court's November 22, 2022 order, [R. 10], Defendants Louisville Metro Housing Authority ("LMHA"), Lisa Osanka, and Cecilia Kelly[1] ("Kelly") (collectively, "Defendants") filed an expedited response opposing Plaintiff's Motion. [R. 15]. Also before the Court are Plaintiff's Motion for Leave to File Supplemental Exhibit, [R. 17], and Motion to Supplement, [R. 18]. This matter is ripe for review.[2]

---

[1] In the pleadings, the Parties name "Cecillia Kelly" as a defendant. [R. 1, at p. 2; R. 6, at p. 1]. This is likely a misspelling of Kelly's first name. Indeed, in their response to the Motion for Preliminary Injunction, Defendants refer to this defendant as "Cecilia Kelly," [R. 15, at p.3], and this spelling is reflected in the correspondences attributed to Kelly that Plaintiff filed with the Motion and his Complaint. *See generally* [R. 1-3; R. 1-7; R. 9-1].

[2] The Court notes that Plaintiff has requested that his Motion be set for a hearing. [R. 19]. "Federal Rule of Civil Procedure 65, which governs the issuance of preliminary injunctions, does not explicitly require the court to conduct an evidentiary hearing before issuing an injunction, but it does direct that '[n]o preliminary injunction shall be issued without notice to the adverse party.'" *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007). The Sixth Circuit has held that district courts are not required "to conduct an evidentiary hearing [when] no material facts necessary to ruling upon Plaintiff's motion were in dispute." *Id.* at 553–54. Here, because any facts in dispute are not material to the Court's resolution of the instant motion, the Court declines to conduct an evidentiary hearing on Plaintiff's motion. *See Id.* (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–1313 (11th Cir.1998) ("Where facts are bitterly contested and credibility determinations must be made to decide

I. **BACKGROUND**

Since 2019, Plaintiff has resided in Louisville public housing managed by LMHA. [1-1, at p. 2]. In August 2020, Plaintiff entered into a lease agreement with LMHA for occupancy of a one-bedroom apartment with a term of one-year. [R. 15-7, at p. 2]. In August 2021, Plaintiff renewed the least for another one-year term. *Id.* at p. 1, 13; R. 15-8]. On March 16, 2022, Plaintiff's emotional support dog was involved in a confrontation with another dog after which Plaintiff met with Kelly, the site manager, to discuss the incident. [R. 15-1, at p. 1]. Plaintiff explained that both dogs were off leash at the time, and Kelly informed Plaintiff that LMHA's policies required leashing animals at all times unless an accommodation had been granted. *Id.* Kelly provided Plaintiff with a reasonable accommodation request form. *Id.*; [R. 9-1, at p. 28]. On March 17, 2022, Plaintiff submitted the completed form requesting an accommodation permitting him to allow his dog to be off leash "for training purposes during surgical recovery." [R, 15-2, at p. 2]. Plaintiff advised a member of the office staff that he would not obtain a signature from his physician verifying the need for the accommodation. [9-1, at p. 27]. While discussion of the request was ongoing among Kelly and other members of LMHA management, on March 21, 2022, Kelly received a complaint from a pregnant resident who claimed that Plaintiff's dog ran into her "knocking her down causing her to have to seek medical attention." *Id.* at 23. Another resident then confronted Plaintiff regarding the safety concerns posed by the off-leash dog. *Id.* at 16. The two engaged in "a few minutes of tense dialogue" before Plaintiff called the police, and an officer

---

whether injunctive relief should issue, an evidentiary hearing must be held. However, where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing."); *Sentinel Trust Co. v. Namer,* 172 F.3d 873 (6th Cir.1998) (unpublished table opinion) (concluding that Rule 65 requires evidentiary hearing "when there is a disputed issue of fact and the documentary record is insufficient to resolve it").

appeared on the scene. *Id.* Plaintiff requested to complete a police report documenting that the other resident threatened to shoot his dog, but the officer declined. *Id.* at 17.

On March 22, 2022, Plaintiff contacted Kelly "[r]equesting immediate emergency relocation to another 'Scattered Site' Housing Unit due [t]o safety concerns for both my Emotional Support Animal and myself." *Id.* at 16. Kelly forwarded Plaintiff's transfer request to LMHA's central office, which approved the request on March 30, 2022 and advised Plaintiff that his transfer date would depend on a waitlist for one-bedroom units. *Id.* at 14–15. On April 5, 2022, Plaintiff submitted another accommodation request form, this time seeking to qualify for a two-bedroom unit to circumvent the waitlist for one-bedroom units. *Id.* at 15-4. On April 11, 2022, Kelly contacted Plaintiff and advised that his accommodation request could not be approved without verification of medical need by his physician. [R. 15-5]. The following day, Plaintiff sent a letter addressed to LMHA staff stating, "I will be filing suit for relief in U.S. District [C]ourt in the days to come for the ongoing discrimination, harassment, retaliation and unsafe [li]ving conditions Mrs. Kelly has created for me and my Emotional Support Animal . . . ." *Id.* at p. 1. On April 29, 2022, LMHA's counsel sent Plaintiff a letter with the subject "Collaborative Process Regarding Request for Reasonable Accommodations." [R. 15-6, at p. 1]. Regarding the request for an exemption from LMHA's leashing policy, counsel stated:

> LMHA unfortunately cannot grant permission to keep your support animal off-leash on its property.
>
> Your support animal has a documented history of aggressive behavior toward LMHA residents and staff as well as other animals. Allowing you to keep the animal off leash would violate local ordinance and pose an unacceptable risk of harm to others.
>
> LMHA wants to work with you collaboratively to identify potential alternative accommodations to meet needs. If you are interested, please contact me to arrange a meeting or this purpose.

*Id.* at 2.

Regarding the request to transfer to one of the available two-bedroom units at another property, counsel stated: "LMHA could place you in a two-bedroom, single-family unit if you can provide a doctor's statement that it is necessary to accommodate your disability. In the absence of such information, however, LMHA can offer transfer to a one-bedroom unit only." *Id.* According to Defendants, "Plaintiff did not respond to LMHA's request for a meeting, nor did he ever provide medical support for his request." [R. 15, at p. 3].

Plaintiff's lease agreement with LMHA, provides that "[t]he resident agrees to furnish accurate information and certifications regarding family composition and income as may be necessary to make determinations with respect to rent, eligibility and appropriateness of dwelling size, on an annual basis or as requested by Management." [R. 15-7, at p. 8]. LMHA sent Plaintiff a letter dated June 16, 2022 instructing him to complete and return several attached recertification forms and to appear for a recertification interview. [R. 9-1, at pp. 2–4]. In response to the letter, Plaintiff sent a "Notice to Cease and Desist" to LMHA's counsel in which Plaintiff stated that he received the letter from LMHA shortly after filing a complaint against LMHA to the United States Department of Housing and Urban Development ("HUD"). [R. 15-9, at p. 1]. Plaintiff asserted: "[LMHA] and its representatives are retaliating against complainant for ongoing complaints seeking an unlawful means of an illegal eviction in violation of both state and federal law." *Id.* at 1–2. Plaintiff advised: "If this Activity continues I will immediately seek a temporary restraining order in the Western District Courts against you and any accomplices in this matter." *Id.* at 2. On July 6, 2022, LMHA's counsel sent a letter responding to the cease and desist, stating:

> You allege in your letter that LMHA is attempting to evict you from the above-listed dwelling unit in retaliation for a complaint you recently made to HUD about living conditions at your apartment complex. You may be assured that this is not the case.

> LMHA is not trying to evict you or otherwise retaliate against you for any reason and only learned of your complaint to HUD when you disclosed the same in your above-referenced letter.
>
> The public housing eligibility recertification packet that you received from LMHA on June 24, 2022 is part of the routine eligibility recertification process that all LMHA tenants must complete annually. It is the same recertification packet that all LMHA residents receive each year and is totally unrelated to your HUD complaint.

[R. 15-10, at p. 1].

According to Defendants, "Plaintiff did not respond to this letter, and he took no further action to schedule a recertification interview." [R. 15, at p. 4]. On August 2, 2022, LMHA sent Plaintiff a second request for completed recertification documents. [R. 15-11]. On August 24, 2022, LMHA sent a "final notice" directing Plaintiff to complete the recertification process within seven days. [R. 15-12]. Plaintiff did not timely comply, and instead on September 30, 2022, Plaintiff filed this action. [R. 1]. Due to Plaintiff's failure to comply with the final notice, on September 30, 2022, LMHA sent Plaintiff a letter labeled "30 Day Lease Termination Letter with 'Right to Cure'", which advised:

> Your lease is being terminated on the grounds that you have not kept your required appointments in order to supply to management, any certification release, information, or documentation on family income or composition needed to process annual redetermination for rent.
> . . .
> In order to avoid the termination of your lease you must remedy the conditions of the violation described above within thirty (30) days from the date of this letter.

[R. 15-13, at p. 1].

On November 17, 2022, LMHA sent Plaintiff a notice again requesting that Plaintiff complete the required recertification process, and also offering to refer Plaintiff to an eviction diversion program. [R. 15-14]. Plaintiff did not respond to the offer, and instead, on November 21,

2022, Plaintiff filed the instant Motion for Temporary Restraining Order and Preliminary Injunction. [R. 9] On November 22, 2022, the Court denied Plaintiff's request for a temporary restraining order because "Plaintiff has failed to meet his burden of sufficiently showing that irreparable harm will result if a temporary restraining order is not issued." [R. 10, at p. 2]. In doing so, the Court noted, "Plaintiff's motion and the exhibits attached thereto establish that on November 17, 2022, Plaintiff was referred to Louisville Metro Housing Authority's Eviction Diversion Program." *Id.* Consequently, the Court found that "[t]he record does not establish that Plaintiff faces an immediate threat of eviction." *Id.* at 3. The Court ordered Defendants to respond to Plaintiff's request for preliminary injunction and set the matter for a telephonic status conference, *id.*, which Magistrate Judge Regina S. Edwards conducted on December 6, 2022. [R. 19]. The Court has reviewed the audio recording of the telephonic status conference in its entirety, [R. 20], and has considered the record as a whole in reaching its findings below.

## II.     DISCUSSION

### A. Motions to Supplement

On December 5, 2022, Plaintiff filed a Motion for Leave to File Supplemental Exhibit in which he requests "to supplement the preliminary injunction record in this case with an additional exhibit." [R. 17, at p. 1]. In support of his request, Plaintiff states that "[t]he Court's orders do not set a deadline or limitations on submission of evidence." *Id.* at 2–3. Plaintiff indicates that the additional exhibit is a flash drive containing several videos and states that he offers this evidence to dispute the arguments presented in Defendants' response to the Motion for Preliminary Injunction. *Id.* at 2. Defendant filed the Motion for Leave to File Supplemental Exhibit concurrently with flash drive, *id.*, as well as an additional Motion for Leave to Supplement Exhibits for Preliminary Injunction Record. [R. 18]. The Motion for Leave to Supplement concerns the

same three videos at issue in the previous motion as well as a "demonstrative exhibit" stored on the flash drive. *Id.* at 2. Plaintiff states that he "has conferred with counsel for Defendants, who did not object to the supplementation of the record with [the videos] [and] take no position on the supplementation of the record with . . . the demonstrative exhibits[]." *Id.* Defendants having no objection and the Court otherwise being sufficiently advised, Plaintiff's request to supplement the record with the exhibits stored on the flash drive filed in the record will be granted. It is unclear why Defendant's filed two separate motions or whether Plaintiff seeks additional relief beyond for the request for permission to supplement the preliminary injunction record. Absent a more specific request, the Court finds that the Motion for Leave to File Supplemental Exhibit is duplicative of the Motion for Leave to Supplement, and therefore, the earlier motion will be denied as moot.

### B.  Motion for Preliminary Injunction

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). On a motion for preliminary injunction, courts must consider the following factors: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Id.* (citing *Leary*, 228 F.3d at 736). "Irreparable harm is an 'indispensable' requirement for a preliminary injunction, and 'even the strongest showing' on the other factors cannot justify a preliminary injunction if there is no 'imminent and irreparable injury.'" *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019)).

A speculative possibility of harm is not sufficient; "plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 22 (2008) (emphasis in original); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) ("[T]he harm alleged must be both certain and immediate, rather than speculative or theoretical.").

Here, Plaintiff argues that "[w]ithout this Court's immediate intervention, Plaintiff faces the imminent prospect of losing his home, thereby making his ability to adjudicate his claims against Defendants difficult, if not impossible." [R. 9, at p.2]. It is true that "[a] loss of housing constitutes an irreparable harm." *Watkins v. Greene Metro. Hous. Auth.*, 397 F. Supp. 3d 1103, 1109 (S.D. Ohio 2019); *see also White v. US Bank N.A.*, No. 17-cv-02671-JPM-DVK, 2017 WL 10311423, 2017 U.S. Dist. LEXIS 232027 (W.D. Tenn. Oct. 11, 2017) (citing *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Cap., Inc.*, 274 F.3d 1085, 1097 (6th Cir. 2001)) ("As to eviction, White is correct that loss of a unique property interest is considered irreparable harm."). But here, the record does not establish that LMHA has any intention of evicting Plaintiff. To the contrary, the record indicates that LMHA has taken great pains for Plaintiff to "be assured that this is not the case." [R. 15-10, at p. 1]. On June 16, 2022, two months before Plaintiff's lease was set to expire, LMHA sent Plaintiff the documents and instructions for the annual recertification process required under HUD regulations. [R. 9-1, at pp. 2–4]. *See* 24 C.F.R. § 5.659 (enumerating the "requirements for reexamination of family income and composition in the Section 8 project-based assistance programs"); 24 C.F.R. § 5.657 (providing that landlords "must conduct a reexamination and redetermination of family income and composition at least annually"). After Plaintiff mistakenly characterized the request for recertification as "an unlawful means of an illegal eviction," LMHA's counsel contacted Plaintiff and clarified:

> LMHA is not trying to evict you or otherwise retaliate against you for any reason . . . The public housing eligibility recertification packet that you received from LMHA on June 24, 2022 is part of the routine eligibility recertification process that all LMHA tenants must complete annually. It is the same recertification packet that all LMHA residents receive each year . . .

[R. 15-10, at p. 1].

Further, LMHA sent three additional notices on August 2, August 24, and September 30, each explaining the recertification requirement and requesting his response. [R. 15-11; R. 15-12; R. 15-13]. Plaintiff did not respond to any of these correspondences, and on November 17, 2022, LMHA sent Plaintiff a notice again requesting that Plaintiff complete the recertification process. [R. 15-14]. Additionally, the notice advised: "We would like to offer you the Eviction Diversion Program in [an] attempt to assist you to maintain your housing." *Id.* at p. 1. Plaintiff did not respond or otherwise engage the eviction diversion program. In their December 1, 2022 response to the instant Motion, Defendants maintain that "LMHA does not want to terminate Plaintiff's lease . . . To the contrary, LMHA has made every effort to avoid termination of Plaintiff's lease. All that is required is his compliance with the annual recertification." [R. 15, at pp. 6–7]. Finally, during the December 6, 2022 telephonic status conference with the Magistrate Judge, counsel for Defendants insisted that LMHA wants to assist Plaintiff to avoid losing his housing. [R. 20]. Counsel also reported that LMHA intends to send Plaintiff another notice granting Plaintiff another thirty days to complete the recertification process. *Id.* Based on the forgoing, there is simply no reason to believe that LMHA will deprive Plaintiff of his housing if the Court does not intervene. Instead, the undisputed evidence establishes that Plaintiff's housing will not be jeopardized unless he continues to refuse to complete the recertification process. *C.f. Litsey v. Hous. Auth. of Bardstown*, No. CIV.A. 399CV114H, 1999 WL 33604017, at *8 (W.D. Ky. Apr. 1, 1999) (finding when a housing authority failed to comply with certification procedures that a preliminary injunction

would prevent irreparable harm "under circumstances in which her Section 8 certificate was terminated unfairly").

To the extent that Plaintiff's motion can be construed as arguing that Defendants should be enjoined from enforcing the recertification requirement, this argument fails. In his Motion, Plaintiff appears to object to Defendants "compelling Plaintiff to contractual agreements without due process and finality of his ongoing adjudicated claims." [R. 9, at p. 17]. Similarly, during the December 6, 2022 telephonic status conference, Plaintiff addressed his unwillingness to submit to the recertification process: "In protection of my due process rights and this ongoing litigation, I felt it was in my best interest not to engage in any further contractual agreements with the Defendants. So, I'm asking the Court to protect my due process rights and not be compelled to provide any additional information to the Defendants or be compelled to give up my due process rights." [R. 20]. As an initial matter, the Court notes that Plaintiff's desire to cease any contractual relationship with Defendants is wholly inconsistent with his interested in continued housing as a tenant of LMHA. More importantly, Plaintiff has failed to establish likelihood of success on the merits of his claim for relief from the recertification requirement and has provided no explanation for how compliance with the recertification process will subject him to imminent, irreparable harm. As has been discussed, recertification is required of *all tenants* seeking to renew their leases, and this recertification requirement is an unambiguous term of Plaintiff's lease. [R. 15-7, at pp. 2, 8, 10]. Plaintiff does not dispute these facts nor does he allege any specific procedural deficiencies in LMHA's enforcement of the requirement. [R. 20] (Plaintiff stating that "Louisville Metro Housing Authority, their policies is [sic] not a matter before this Court"). Therefore, Plaintiff has failed to establish that the recertification process will cause a deprivation of right. *See Grant v. Albemarle Cnty.*, No. 3:20-CV-00026, 2021 WL 1320718, at *10 (W.D. Va. Apr. 8, 2021)

(denying preliminary injunction and finding "[a]t bottom, Plaintiff's failure to provide required information to ACOH was a central reason for termination of her housing voucher, and there is little dispute ACOH acted within its purview to require such information from Plaintiff"); *Coley v. Brook Sharp Realty LLC*, No. 13 CIV. 7527 LAP, 2015 WL 5854015, at *5 (S.D.N.Y. Sept. 25, 2015) (citation omitted) ("Plaintiff's failure to report his income on the annual household recertifications, list his name on those recertifications, or add his name to the lease are all 'significant, especially in regard to whether he is entitled to a Section 8 subsidy for the apartment'"); *Litsey*, 1999 WL 33604017, at *5 (in terminating housing benefits, due process requires compliance with HUD regulations for recertification and sufficient evidence such that decision was not arbitrary). Finally, the Court notes that Plaintiff completed the certification process at the time he entered into his lease agreement in August 2021. [R. 15-7]. Plaintiff does not allege any injury arising from the initial circumstances, which undermines the suggestion that completing the process to update his certification will prejudice his interests. Based on the foregoing, the Court finds that Plaintiff has failed to meet his burden of showing that he is entitled to a preliminary injunction, therefore, his motion will be denied.

### C. Settlement Conference

During the December 6, 2022 telephonic status conference, the Magistrate Judge inquired as to the Parties respective positions on engaging in settlement discussions. [R. 20]. Defendants indicated that they are amenable participating in settlement discussions, including scheduling a settlement conference. *Id.* Plaintiff stated that he was unwilling to engage in settlement discussions before the Court rules on his Motion for Preliminary Injunction. *Id.* At another point during the status conference, Plaintiff indicated that he would be willing to participate in a settlement conference if Defendants would agree not to evict him prior to the date of the settlement

conference. *Id.* Given that during the status conference, Defendants represented that LMHA would extend the time for Plaintiff to complete the recertification process by an additional thirty-days and in light of the Court's disposition of the Motion for Preliminary Injunction below, *id.*, the Court will refer this matter to the Magistrate Judge to conduct a settlement conference.

**IT IS HEREBY ORDERED** as follows:

1. Motion for Leave to Supplement Exhibits for Preliminary Injunction Record **[R. 18]** is **GRANTED**. The non-electronic exhibits filed with the Clerk of Court are taken under the Courts consideration.

2. Motion for Leave to File Supplemental Exhibit **[R. 17]** is **DENIED as moot**.

3. Plaintiff's Motion for Preliminary Injunction **[R. 9]** is **DENIED**.

4. On or before **December 16, 2022,** the Parties shall contact the Case Manager for Magistrate Judge Regina S. Edwards, Ashley Henry, at ashley_henry@kywd.uscourts.gov and provide the dates in December 2022 and January 2023 on which they are available to participate in a settlement conference. A settlement conference will be set by separate order.

This the 12th day of December, 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY

cc:   Counsel of Record