UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

YUSEF ABDULLAH BILAL ALI,                    )
                                             )
            Plaintiff,                       )          Civil Action No. 3:22-CV-463-CHB
                                             )
v.                                           )
                                             )          **MEMORANDUM OPINION**
LOUISVILLE METRO HOUSING                     )          **AND ORDER**
AUTHORITY, *et al.*,                         )
                                             )
            Defendants.                      )

                          ***   ***   ***   ***

        This matter is before the Court on the Motion for Summary Judgment filed by Defendants

Louisville Metro Housing Authority ("LMHA"), Lisa Osanka, and Cecillia Kelly.[1]  [R. 52].  After

Plaintiff Yusef Abdullah Bilal Ali failed to file a response to the motion, *see* [R. 50], the Court

directed him to file any response by April 1, 2024, and warned him that failure to respond to the

Defendants' motion might result in dismissal of this action or in the Court granting the Defendants'

motion.  *See* [R. 56].  As of the entry of this Order, Ali has not made any filings responsive to

either the Defendants' motion [R. 52] or to the Court's order [R. 56].  The Defendants' motion

thus stands submitted for review.  For the following reasons, the Defendants' motion will be

**GRANTED**.

        I.      **Legal Standard**

        Under the Federal Rules of Civil Procedure, summary judgment is proper where "the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When considering a motion for summary

judgment, the Court must construe the evidence and draw all reasonable inferences from the

---

[1] As the Court has observed before, Defendant Kelly's first name is spelled multiple ways in the record.
*See* [R. 21, p. 1 n.1].

underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). The Court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The initial burden of establishing that no genuine dispute of material fact exists rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* at 324–25. When, as here, defendants move for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Where "a party fails to support an assertion of fact or fails to properly address another party's assertion of fact," the Court may treat the fact as undisputed. Fed. R. Civ. P. 56(e)(2). A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

## II.    Analysis

This case has a lengthy and extensive factual and procedural history that the Court does not need to restate here. *See, e.g.*, [R. 21] (Memorandum Opinion and Order denying Ali's Motion for Preliminary Injunction); [R. 42] (Memorandum Opinion and Order denying Ali's Emergency

Motion for Injunction Pending Appeal). Briefly stated, Ali has resided in public housing managed by LMHA since 2019. *See* [R. 1-1, p. 5]. In September 2022, he filed suit against the Defendants alleging various claims, including:

> disability discrimination, racial discrimination, gender discrimination, age discrimination, failure to reasonably accommodate, failure to engage in the interactive process, and retaliation of Kentucky's Civil Rights Act of 1968 (KCRA); unlawful business practices in violation of Kentucky's Unfair Business Practices KRS§367.170, American with Disability Act 1990 42 U.S.C. § 12101[.]

*Id.* at p. 2 ¶1.

On November 21, 2022, Ali filed a motion for a temporary restraining order and for a preliminary injunction, asking the Court to prevent LMHA from evicting him from his residence. *See* [R. 9]. Upon review, the Court denied Ali's request for a TRO, finding that he could not demonstrate irreparable harm given that the record contained evidence that Ali had been referred to LMHA's Eviction Diversion Program. *See* [R. 10, p. 2]. In December 2022, after hearing from the Defendants, the Court also denied Ali's request for a preliminary injunction, again finding that Ali could not show irreparable harm given LMHA's indications that it did not want to evict him. *See* [R. 21, p. 8]. The Court also found that Ali had failed to demonstrate a likelihood of success on the merits of his claims. *See id.* at 10. Ali appealed the Court's Memorandum Opinion and Order to the United States Court of Appeals for the Sixth Circuit. *See* [R. 22].

After denying Ali's preliminary injunction motion, the Court referred this matter to a settlement conference with United States Magistrate Judge Regina S. Edwards. *See* [R. 21, pp. 11–12]. Counsel was appointed to represent Ali at the settlement conference. *See* [R. 29]. The parties met for their settlement conference in March 2023 but were unable to reach an agreement. *See* [R. 32].

In May 2023, the Defendants requested a telephonic status conference with Magistrate Judge Edwards to "to inform the Court about concerns regarding Mr. Ali's behavior, including alleging that he made a death threat against an employee." [R. 34]. During the call, "Ali emphatically denied making threats and expressed concerns of perceived ongoing harassment." *Id.* At that time, Magistrate Judge Edwards emphasized that these matters fell outside the scope of the instant action and advised that any further status reports were to be made to the Court in writing. *See id.*

Roughly two months later, on July 5, 2023, Ali filed an Emergency Motion for Injunction Pending Appeal. *See* [R. 37]. In that motion, Ali asked that the Court prevent his eviction that was scheduled to take place July 10, 2023, through a state forcible detainer action. *See id.*; *see also* [R. 37-1]. The Court promptly scheduled a telephonic hearing on the matter, during which Ali and counsel for the Defendants participated. *See* [R. 39]. Ali was permitted to supplement his motion, and the Defendants filed a response. *See* [R. 40]; [R. 41]. Upon full consideration of the record, the Court again denied Ali's request for injunctive relief. *See* [R. 42]. In the Memorandum Opinion and Order on that motion, the Court provided a detailed discussion of the facts of the case and explained how Ali had failed to demonstrate a likelihood of success on the merits on his: (1) failure to accommodate claim; (2) failure to engage in the interactive process claim; (3) retaliation claim; and (4) unlawful business practices claim. *See id.* Ali also appealed that Memorandum Opinion and Order to the Sixth Circuit. *See* [R. 43].

In fall 2023, the Sixth Circuit ruled on both of Ali's appeals. *See* [R. 45] (dismissing appeal of "Emergency Motion" for lack of jurisdiction); [R. 47] (affirming this Court's denial of Ali's original motion for preliminary injunction). Following the Sixth Circuit's decisions, the parties appeared before Magistrate Judge Edwards for a telephonic status conference in November 2023.

*See* [R. 50].  At that time, dispositive motions deadlines were set.  *See id.*  In January 2024, Defendants timely filed their Motion for Summary Judgment.  *See* [R. 52].  Ali did not respond to the Defendants' motion within the original time to do so, *see* [R. 50], and he also failed to respond when given another opportunity to do so by the Court.  *See* [R. 56].  The Defendants' motion thus stands submitted to the Court.

As a preliminary matter, the Court observes that Ali failed to respond to Defendants' motion, and the record reveals that Ali has otherwise failed to participate in this action since the parties' telephonic conference with Magistrate Judge Edwards in November 2023.  *See* [R. 50].  There is thus at least a fair question as to whether Ali has failed to prosecute this action.  *See Rogers v. City of Warren*, 302 F. App'x 371, 376 (6th Cir. 2008) (discussing factors for court to assess appropriateness of involuntary dismissal of complaint under Federal Rule of Civil Procedure 41).  However, because Ali is proceeding *pro se* and because the Defendants' motion demonstrates that they are entitled to summary judgment, the Court will address each of Ali's claims on the merits.

### a.  Failure to Accommodate

In his first claim for relief, Ali alleges disability-based discrimination in violation of federal and state law.  See [R. 1-1] (citing the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the Kentucky Civil Rights Act ("KCRA")).  For this claim of relief, Ali alleges that the Defendants discriminated against him when: (1) they denied his request for accommodation to allow his emotional support dog to be off lease on LMHA property and common areas during his recovery from knee surgery; and (2) they denied his request to allow him to transfer to a single-family housing unit.  *See* [R. 42, pp. 16–17] (citing [R. 1]; [R. 1-1]).

As the Court explained before, *see id.* at 16, under both state and federal law, a plaintiff must demonstrate the following elements in order to succeed on a disability discrimination claim for failure to accommodate: (1) the plaintiff suffers from a disability; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation. *See Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011) (citation omitted); *see also Hollis v. Chestnut Bend Homeowner's Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014).   Reasonable accommodation claims under the FHA do not require proof of discriminatory intent. *See Hollis*, 760 F.3d at 540.

Neither theory upon which Ali bases his failure to accommodate claim can survive the Defendants' motion for summary judgment.  First, he cannot show that his request to keep his dog off leash was a *reasonable* accommodation.  Instead, the record shows that the Defendants fairly determined that such a request was *unreasonable* given the dog's documented history of aggression toward other residents, LMHA staff, and other animals. *See, e.g.*, [R. 15-1]; [R. 15-3]; [R. 9-1, pp. 20, 23].  Second, Ali cannot show the Defendants discriminated against him by denying his request for a single-*family* unit.  Here, the record demonstrates that LMHA was amenable to Ali's request and agreed to such a transfer subject to Ali providing a physician's certification or letter verifying that the transfer was medically necessary. *See, e.g.*, [R. 9-1, p. 14]; [R. 15-4, p. 1]; [R. 15-5, p. 1].  But Ali never provided that documentation.  He therefore cannot show that the Defendants refused the accommodation. *See* [R. 42, pp. 19–20] (also explaining that a housing provider is entitled to request information to evaluate whether a requested accommodation may be necessary).  The Defendants are therefore entitled to summary judgment on this claim.

### b.  Failure to Engage in the Interactive Process

In his second claim, Ali alleges that the Defendants failed to engage in an interactive process in violation of the FHA.  *See* [R. 1-1, p. 9].  But as the Court explained previously, the FHA does not prohibit a landlord from failing to engage in an interactive process.  *See* [R. 42, pp. 21–22] (citing *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1192 (9th Cir. 2021)).

Even so, to the extent Ali seeks to bring this claim under the ADA, which does in certain circumstances require an interactive process, the claim nonetheless fails as the record is *replete* with documentation of the *extensive* interactive process the Defendants engaged in with Ali to keep him housed.  *See id.*  For example, Defendant Kelly and LMHA provided Ali with reasonable accommodation forms; agreed to transfer him to another unit as soon as one was available; explained that no one-bedroom single family units were available at the time; advised him what would be required for the two-bedroom family unit he requested (a doctor's notice); and otherwise continually offered assistance to Ali.  *See* [R. 9-1, p. 14]; [R. 15-5, p. 1]; *see also* [R. 15-4].  Further, LMHA only initiated and followed through with eviction proceedings when Ali made a death threat against an LMHA employee.  *See* [R. 34]; *see also* [R. 52-1, p. 4] ("Here, the record is replete with documentation showing LMHA sought in good faith to engage Plaintiff in an interactive process concerning his accommodation requests for over a year and only brought eviction proceedings after new allegations arose that Plaintiff threatened LMHA staff.").  Against such a record, there simply is no dispute as to any material fact regarding whether the Defendants engaged in an interactive process with Ali.  They are therefore entitled to summary judgment on this claim.

### c.  Retaliation

For his third cause of action, Ali alleges that the Defendants retaliated against him in violation of federal and state law.  *See* [R. 1-1, p. 10] (citing the KCRA and the FHA).  Here, as the Court noted before, Ali alleges that the Defendants retaliated against him for requesting a reasonable accommodation and failing to engage in the interactive process, and by creating a hostile living environment.  *See* [R. 42, p. 23] (citing [R. 1-1, p. 10]).  He also alleges retaliation for filing a claim with the United States Department of Housing and Urban Development and for filing this action.  *See id.* (citing [R. 9, pp. 15–16]).

Federal and state law prohibit retaliation, *see id.* (discussing the FHA, the KCRA, and the ADA), and under these federal and state laws, "[t]he essence of a retaliation claim . . . is that the plaintiff engaged in conduct protected by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken at least in part because of the protected conduct." *Vance v. City of Maumee*, 960 F. Supp. 2d 720, 734 (N.D. Ohio 2013) (internal quotation marks omitted); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 386–87 (6th Cir. 1999) (en banc) (explaining that retaliation claims may arise under various bodies of statutory law, "but the essential framework stays the same")) (citations omitted); *Lexington Fayette Urb. Cnty. Hum. Rights Comm'n v. Whaley*, NO. 2020-CA-1465-MR, NO. 2020-CA-1537-MR, 2022 WL 2182752, *5 (Ky. Ct. App. June 17, 2022) (explaining that retaliation claims under the KCRA are interpreted consistent with federal law and a plaintiff must show that he engaged in a protected activity, the exercise of which was known to the defendant, who then took an action materially adverse to the plaintiff, and there exists a causal connection between the protected activity and the materially adverse action).

On this record, Ali has not pointed to any evidence demonstrating a causal connection between any protected activity on his behalf and any actions taken against him by the Defendants.

*See* [R. 42, pp. 24–25] (discussing lack of evidence of causal connection); *see also* [R. 47, p. 4] ("We therefore conclude that the district court did not abuse its discretion in finding . . . that he was unlikely to succeed on the merits of his retaliation claim.").  Further, he has provided no evidence to suggest LMHA wrongly asked that he complete the recertification process that was a condition of his public housing (or that it improperly pursued eviction following his threats against LMHA staff).  The Defendants are therefore entitled to summary judgment on this claim.

### d.  Unlawful Business Practices

In his final cause of action, Ali alleges a claim for "unlawful business practices" in violation of federal and state law.  *See* [R. 1-1, p. 11] (citing KRS § 367.110 and 42 U.S.C. § 3601).  But the facts Ali alleges in support of this claim simply restate those that support his other causes of action.  *See* [R. 42, p 25].  This claim thus fails for the same reasons discussed above, and the Defendants are similarly entitled to summary judgment on this claim.

### III.   Conclusion

For the reasons discussed above, and with the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

**1.**  Defendants' Motion for Summary Judgment **[R. 52]** is **GRANTED**.

**2.**  A separate judgment shall issue.

This the 19th day of April, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Counsel of Record
    Plaintiff, *pro se*

- 9 -